# No. 26-40061

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

James Bien,

Plaintiff - Appellant

v.

Union Pacific Railroad Company,

Defendant - Appellee

## On Appeal from
United States District Court for the Eastern District of Texas

4:25-CV-74

## BRIEF OF APPELLANT JAMES BIEN

SUBMITTED BY:

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Appellant, James Bien

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellee: |
|---|---|
| Union Pacific Railroad Company | Jimmie Pinkham of Baird Holm, L.L.P. Omaha, NE |

| Appellant: | Counsel for Appellant: |
|---|---|
| James Bien | Donald E. Uloth of Law Office of Donald E. Uloth Dallas, TX |

/s/ Donald E.Uloth
Attorney of record for Appellant

# STATEMENT REGARDING ORAL ARGUMENT

This is a simple matter, and oral argument is not likely to be helpful. Appellant waives oral argument.

**TABLE OF CONTENTS**

Contents                                                                                    Page(s)

Certificate of Interested Persons……………………………………………… ii

Statement Regarding Oral Argument………………………………………… ii

Table of Contents…………………………………………………………... iii

Table of Authorities…………………………………………………………. v

Jurisdictional Statement……………………………………………………. 1

Statement of the Issues……………………………………………………... 1

Statement of the Case………………………………………………………. 2

    A.   Bien passed color-vision tests and worked safely for 15 years………... 2

    B.   Bien was given a different color-vision test and lost his job………….. 2

    C.   Union Pacific modified its fitness-for-duty program…………………... 3

    D.   New medical information triggered a new
        fitness-for-duty review in 2015………………………………………... 4

    E.   The *Harris* class-action lawsuit…………………………………….. 5

    F.   Bien filed an EEOC charge, and then filed the present lawsuit……….. 6

    G.   Union Pacific's 12(b)(6) motions to dismiss…………………………... 7

    H.   The district court granted the motion and dismissed the case…………. 7

Summary of the Argument…………………………………………………… 8

Standard of Review…………………………………………………………. 9

Argument……………………………………………………………………11

A.   Plaintiff's complaint alleged a basis for tolling…………………….. 11

B.   Bien's assertion that he is entitled to *American Pipe* tolling is not foreclosed by anything in or attached to his complaint……………….. 13

    1.   Bien was not unambiguously excluded from the *Harris* class by the revised class definition adopted in 2019……………. 13

    2.   The unambiguous exclusion requirement………………………... 14

    3.   The term "fitness-for-duty examination" is broad……………….. 17

    4.   Plaintiff's proposed interpretation is reasonable…………………. 19

    5.   The Third Amended Complaint alleges facts sufficient to support the conclusion Bien satisfied the "fitness-for-duty examination" clause in the revised definition……………............. 20

    6.   Plaintiff did not argue that fitness-for-duty *examination* and fitness-for-duty *decision* were interchangeable……………... 23

Conclusion……………………………………………………………………. 25

Certificate of Service…………………………………………………………. 26

Certificate of Compliance…………………………………………………….. 26

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                     <u>Page(s)</u>

Am. Sustainable Bus. Council v. Hegar,
    No. 1:24-CV-01010-ADA,
    2026 U.S. Dist. LEXIS 22918 (W.D. Tex. Feb. 3, 2026)…………………17

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)……………………………………….………………9

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)……………………………………………………. 9-10

DeFries v. Union Pacific Railroad Co.,
    104 F.4th 1091 (9th Cir. 2024)……………………………………14-16, 20, 24

Goodman v. Praxair, Inc.,
    494 F.3d 458 (4th Cir. 2007)…………………………………………… 9

Grizzle v. Smith Unit Mailroom Staff,
    No. 5:24-CV-00187-H,
    2025 U.S. Dist. LEXIS 230384 (N.D. Tex. Nov. 25, 2025)………………17

Harris v. Union Pacific Railroad Company,
    329 F.R.D. 616 (D. Neb. Feb. 5, 2019)……………………………… *passim*

Harris v. Union Pacific Railroad Company,
    953 F.3d 1030 (8th Cir. 2020)………..………………………………… 6

Holguin v. Del Sur Pueblo,
    No. EP-21-CV-67-DB,
    2021 U.S. Dist. LEXIS 171354 (W.D. Tex. Sep. 9, 2021)…...……………10

Jaso v. Coca Cola Co.,
　　435 Fed. Appx. 346 (5th Cir. 2011) ………………………..…… 10, 12, 25

Lillie v. Off. of Fin. Institutions State of Louisiana,
　　997 F.3d 577 (5th Cir. 2021)………………………………………... 16

Lovelace v. Software Spectrum, Inc.,
　　78 F.3d 1015 (5th Cir.1996)……..…………………………………... 12

Mayer v. Union Pacific Railroad Co.,
　　No. 8:23-CV-225,
　　2025 U.S. Dist. LEXIS 125766 (D. Neb. Jul. 2, 2025)..……………….17

Palmer v. Union Pac. R.R. Co.,
　　656 B.R. 789 (D. Neb. 2023) …………………………………………　5

Petrobras Am., Inc. v. Samsung Heavy Indus. Co.,
　　9 F.4th 247 (5th Cir. 2021) …………………………………………　9

Ramirez v. City of San Antonio,
　　312 F.3d 178 (5th Cir. 2002)……………………………………….12

Sawtell v. E.I. du Pont de Nemours & Co.,
　　22 F.3d 248 (10th Cir. 1994)…..………………………………... 15, 16

Smith v. Pennington,
　　352 F.3d 884 (4th Cir. 2003)……………………………………... 15, 16

Turner v. BNSF Ry. Co.,
　　138 F.4th 224 (5th Cir. 2025)…………………………………….. 20

White v. U.S. Corr., L.L.C.,
　　996 F.3d 302 (5th Cir. 2021)………………………………………　9

Zaragoza v. Union Pacific Railroad Co.,
    112 F.4th 313 (5th Cir. 2024)………………………………………… 11, 16

Rules and Statutes

Fed. R. Civ. P. 12(b)(6)……………………………………………………1, 7, 9, 10, 12

28 U.S.C. § 1291…………..……………………………………………………... 1

28 U.S.C. § 1331………..………………………………………………………... 1

42 U.S.C. § 12101………..……………………………………………………… 1

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of a district court in a civil case in which plaintiff asserted claims based on the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* The district court had original jurisdiction over the federal law claims under 28 U.S.C. § 1331.

Because the district court entered a final order, this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

This appeal is timely because the district court granted a 12(b)(6) motion to dismiss and entered its final judgment on January 2, 2026, ROA.26-40061.529, and Plaintiff filed his notice of appeal on January 29, 2026. ROA.26-40061.544.

This is an appeal from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.     Whether the Third Amended Complaint alleges facts that foreclose the possible application of *American Pipe* tolling to Plaintiff's claims.

2.     Whether Bien was unambiguously excluded from the *Harris* class of plaintiffs in 2019 when the district court adopted a revised definition of the class.

## STATEMENT OF THE CASE

This is a disabilities discrimination case against James Bien's former employer, Union Pacific Railroad Company. ROA.26-40061.282-323 (Third Amended Complaint). The complaint alleged the following.

**A.     Bien passed color-vision tests and worked safely for 15 years.**

Union Pacific hired Bien in 1998 as a switchman/brakeman. Before starting, Bien took a pre-employment physical that included an Ishihara color-vision test. Bien failed this test, but he took and passed a Farnsworth color-vision test, so he was allowed to begin working. ROA.26-40061.284, ¶¶ 8-9.

Bien later became a conductor, and he worked safely for close to 15 years as a conductor. ROA.26-40061.284, ¶ 10.

Every two or three years, Union Pacific retested Bien's color vision to recertify him as a conductor and to make sure he was able to recognize colored train signals. Each time, Bien failed an Ishihara test, then he passed a secondary test administered in Union Pacific's train yard in Longview, Texas using the colored train signals he saw when working – the signals he needed to recognize to do his job.  ROA.26-40061.284, ¶ 11.

**B.     Bien was given a different color-vision test and lost his job.**

When Bien went through this recertification process in 2013, he failed the Ishihara test as usual. But this time, Union Pacific had him take a different color-

2

vision field test in a different location using a different type of signal. ROA.26-40061.285-6, ¶¶ 16-21. Union Pacific claims Bien failed this test. Union Pacific imposed work restrictions on Bien, decided it could not accommodate the restrictions and let him keep working, and removed him from service as a conductor. ROA.26-40061.286-7, ¶¶ 22-27.

In its July 30, 2013 letter to Bien informing him of its decision, Union Pacific stated: "If updated medical information is received, we will be glad *to have the information reviewed* and obtain another fitness-for-duty decision." ROA.26-40061.287, ¶ 28, and ROA.26-40061.310 (emphasis added).

Bien disputed his removal from service, and his union challenged it on his behalf, but the challenge was ultimately not successful. ROA.26-40061.288, ¶ 36.

Bien later took another job at Union Pacific making less money. ROA.26-40061.288, ¶ 37.

## C.    Union Pacific modified its fitness-for-duty program.

In 2014, Union Pacific implemented new Medical Rules outlining its Fitness-for-Duty program and the fitness-for-duty evaluations of employees. ROA.26-40061.284, ¶ 13. The Rules state that the company's Health and Medical Services department (HMS) is responsible for these evaluations and has "the final authority for determining an employee's Fitness-for-Duty designation." ROA.26-40061.299.

3

**D.     New medical information triggered a new fitness-for-duty review in 2015.**

In 2015, Bien received a computer notification from Union Pacific about doing his Federal Railroad Administration recertification. ROA.26-40061.288, ¶ 38.

On September 17, 2015, Bien took and passed the Ishihara color-vision test. Based on this information, Bien asked Union Pacific to have the information reviewed (as the company promised to do in its 2013 letter), let him retake the color-vision field test, review his work restrictions, and to reinstate him to his position. ROA.26-40061.289, ¶¶ 39-40.

The passed Ishihara test triggered a review of the updated medical information by a committee to determine if Bien was fit for duty as a conductor. ROA.26-40061.289, ¶ 41. A committee reviewed and considered all available information. ROA.26-40061.313.

By letter dated October 13, 2015, Union Pacific's medical director (Dr. John Holland) acknowledged that Bien had requested a review of the restrictions related to his color vision. He said a committee had reviewed the information, and: "After considering all information, the appeals committee concluded" the work restrictions would remain in place and he would not be reinstated as a conductor. ROA.26-40061.313. Dr. Holland's letter also listed new requirements Bien would

have to meet to be restored to his position, meaning this was more than a reaffirmation of an earlier decision. ROA.26-40061.313.

**E.   The *Harris* class-action lawsuit.**

*Harris* began as a multiple-plaintiff case, but on February 19, 2016, the plaintiffs filed an amended complaint asserting a class-action lawsuit against Union Pacific. The amended complaint alleged that Union Pacific's fitness-for-duty policies systematically discriminated against employees with disabilities. *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). The amended complaint proposed a class defined as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Harris*, Case No. 16-381, ECF No. 20 at 17, ¶ 116. The operative date of "300 days before" was September 18, 2014. *Palmer v. Union Pac. R.R. Co.*, 656 B.R. 789, 795 (D. Neb. 2023), *reconsideration denied*, 2024 WL 37225 (D. Neb. Jan. 3, 2024).

The *Harris* plaintiffs later moved for class certification, and by order dated February 5, 2019, the district court certified a class using a slightly different definition, which was:

> All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

*Harris,* 329 F.R.D. at 628. This narrowed the class by requiring a specific action – a fitness-for-duty examination as a result of a reportable health event – in place of being removed from service over their objection, or suffering any adverse action for reasons related to a Fitness-for-Duty Evaluation. The record in this case sheds no light on a possible reason for substituting the word *examination* for *evaluation*.

Union Pacific appealed, and on March 4, 2020, the Eighth Circuit reversed the certification decision. *Harris*, 953 F.3d at 1039.

**F.    Bien filed an EEOC charge, and then filed the present lawsuit.**

On April 10, 2020, Bien dual-filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission, Civil Rights Division on April 10, 2020. ROA.26-40061.291, ¶ 52.

On September 3, 2024, the EEOC issued a determination finding reasonable cause to believe Union Pacific discriminated against Bein based on disability, in violation of the ADA. ROA.26-40061.291, ¶ 53.

On October 28, 2024, the EEOC issued a Conciliation Failure and Notice of Rights, triggering a 90-day deadline for filing a lawsuit in federal court. ROA.26-40061.291-92, ¶ 54.

On January 24, 2025 (the 88th day) Bien filed this lawsuit. ROA.26-40061.1-11 (the Complaint).

## G.     Union Pacific's 12(b)(6) motions to dismiss.

Without filing an answer, Union Pacific filed a motion to dismiss the complaint. ROA.26-40061.45.  Plaintiff then amended his complaint, ROA.26-40061.65, and the district court denied the motion to dismiss as moot. ROA.26-40061.104.

On March 25, 2025, Union Pacific filed a motion to dismiss the amended complaint. Plaintiff filed his response on April 8, 2025, and Union Pacific replied on April 15, 2025.

Plaintiff later moved for leave to file a Third Amended Complaint adding some allegations that did not affect the pending motion to dismiss. ROA.26-40061.234. The district court granted the motion and allowed the amendment, ROA.26-40061.332, but it also signed an order providing that the previously-filed motion to dismiss would remain pending. ROA.26-40061.334.

## H.     The district court granted the motion and dismissed the case.

On January 2, 2026, the district court issued a Memorandum Opinion and Order granting the motion to dismiss and dismissing the case. ROA.26-40061.529. This was a final judgment, disposing of all claims and issues.

On January 29, 2026, Bien commenced this appeal by filing a Notice of Appeal in the district court. ROA.26-40061.544.

## SUMMARY OF THE ARGUMENT

This case concerns definitions used to define a class of plaintiffs in an earlier class-action lawsuit against Union Pacific.  Bien's claims in this case are barred by limitations unless he was a member of the class as originally defined, and as defined in the revised class definition certified by the district court. However, if he was a member of the class at all times until the class was decertified on appeal, limitations was tolled, and his claims are timely.

The earlier lawsuit was an Americans With Disabilities Act case. A group of plaintiffs asserted that Union Pacific used procedures to determine employees' fitness for duty that discriminated against persons with disabilities. The procedures were described in a document called Medical Rules. The Medical Rules defined two key terms that were used to define the class, which were: (1) "fitness for duty," and (2) "reportable health event." However, the Medical Rules do not define "fitness-for-duty examination," a term that was used in the revised class definition.

In its motion to dismiss, Union Pacific argued that Plaintiff was not a member of the class as originally defined in the complaint, or under the revised definition used to certify the class. The lower court rejected the first argument, but it granted the motion based on the second argument. In doing so, the lower court

8

failed to assume the truth of the well-pled allegations in the complaint, and it failed to construe all allegations in the light most favorable to the Plaintiff. More specifically, the court failed to draw reasonable inferences in plaintiff's favor concerning the meaning of the term "fitness-for-duty examination."

Plaintiff will show he was a member of the class action under both definitions. As such, the statute of limitations on his claims was tolled, his claims are timely, and the district court erred by granting the motion to dismiss.

## STANDARD OF REVIEW

This Court reviews an order granting a 12(b)(6) motion to dismiss de novo. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021). The Court must accept all well-pled facts in the complaint as true, and it must draw all reasonable inferences in favor of the plaintiff. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306-07 (5th Cir. 2021). If the complaint alleges facts which, if true, state a claim for relief that is plausible, the motion must be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff is not required to anticipate affirmative defenses and include matters relevant to them in his complaint before they are raised. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). Rather, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with

9

the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

It is therefore improper to dismiss a case pursuant to 12(b)(6) based on a statute of limitations defense unless it is clear from the complaint that the action is time barred *and* the complaint fails to raise a plausible basis for tolling (*i.e.* one that is not foreclosed by the allegations in the complaint.). *Jaso v. Coca Cola Co.*, 435 Fed. Appx. 346, 351-352 (5th Cir. 2011).

For example, in *Holguin v. Del Sur Pueblo*, No. EP-21-CV-67-DB, 2021 U.S. Dist. LEXIS 171354 (W.D. Tex. Sep. 9, 2021), the defendants moved for 12(b)(6) dismissal based on a two-year statute of limitations. Plaintiff countered by arguing the Texas Supreme Court had extended the applicable limitations period in one of its COVID-19 related orders. Citing *Jaso*, the district court found this argument to be a potentially valid response to the limitations defense. *Id.* at *22 (plaintiff's response to the motion to dismiss "demonstrates a 'potential response to the affirmative defense of statute of limitations'") (quoting from plaintiff's response to the motion to dismiss). Thus, the mere possibility of overcoming the limitations defense is enough to warrant denial of a 12(b)(6) motion based on limitations.

10

# ARGUMENT

Plaintiff's Third Amended Complaint alleged a basis for tolling the applicable statute of limitations. Plaintiff is relying on *American Pipe* tolling, based on a previously-filed class action lawsuit in the District of Nebraska, *Quinton Harris et al. v. Union Pacific Railroad Company,* Case No. 8:16-cv-381 (D. Neb.). Nothing in the complaint forecloses the possibility of Plaintiff prevailing on his tolling argument.

## A.   Plaintiff's complaint alleged a basis for tolling.

In *American Pipe & Const. Co. v. Utah*, 415 U.S. 538 (1974), the Court held: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." This tolling continues for the benefit of each class member "until the class is decertified or the case is otherwise resolved." *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 319 (5th Cir. 2024).

In his Third Amended Complaint, Bien alleged all facts necessary to show that limitations on his claims were tolled. ROA.26-40061.290-92, ¶¶ 47-55. Bien alleged he was a member of the original class, ROA.26-40061.291, ¶ 48, and that he continued to be a member of the class under the revised definition. ROA.26-40061.291, ¶ 49.

11

This means Bien's claims were tolled from the moment his claims accrued in 2015 until March 4, 2020, when the class was decertified. Bien then had 300 days in which to file a Charge of Discrimination with the EEOC. *See, e.g., Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1)). Bien timely filed a charge of discrimination on April 10, 2020, well within this 300-day period. ROA.26-40061.291, ¶ 52. On October 28, 2024, the EEOC issued a Conciliation Failure and Notice of Rights, triggering a 90-day deadline for filing a lawsuit in federal court. ROA.26-40061.291-92, ¶ 54. Bien filed this lawsuit on the 88th day, January 24, 2025. ROA.26-40061.1-11 (the Complaint).

Union Pacific's attempt to dismiss the case based on an affirmative defense therefore fails unless the complaint alleges facts completely foreclosing the possible application of *American Pipe* tolling. *Jaso* at 351-352. No such facts are alleged in the body of the complaint. However, when considering a 12(b)(6) motion to dismiss, a district court can consider documents attached to the complaint. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996).

Based on documents attached to the complaint, and inferences in its favor (not Plaintiff's) Union Pacific argued that Bien was unambiguously excluded from the class when a revised definition was adopted in the order certifying the class. As discussed below, at best the attachments give rise to competing interpretations of

12

the term "fitness-for-duty examination," but mere ambiguity cannot prove Bien is foreclosed from prevailing on his tolling argument.

**B.    Bien's assertion that he is entitled to *American Pipe* tolling is not foreclosed by anything in or attached to his complaint.**

The core issue in this appeal is whether Bien was unambiguously excluded from the *Harris* class of plaintiffs in 2019 when the district court adopted a revised definition of the class. If Bien was unambiguously excluded, tolling of his claims ended when the definition changed, and his claims are not timely. But if there is any chance Bien was not excluded by the revised definition, at this stage of the litigation, he is entitled to the benefit of all doubt, and it was error to dismiss the case.

For ease of reference, Bien repeats the revised class definition here:

All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

**1.    Bien was not unambiguously excluded from the *Harris* class by the revised class definition adopted in 2019.**

The district court below found that Bien was a member of the *Harris* class as originally defined, but he was unambiguously excluded by the "fitness-for-duty examination" clause in the revised definition. More specifically, the court found the 2015 Ishihara test results to be a reportable health event (which was after

September 18, 2014), but the court said this did not trigger a fitness-for-duty examination. ROA.26-40061.541. The court therefore reasoned that tolling ended for Bien when the definition was revised in 2019, so the charge he filed more than a year later was not timely. The district court therefore found Bien's claims were barred by limitations. ROA.26-40061.542-3.

Deciding this at the pleadings stage was improper because the term "fitness-for-duty examination" can reasonably be interpreted to include the review process that was triggered by the Ishihara test results.  If the term *fitness-for-duty examination* refers to testing and nothing else (the district court's interpretation), then Bien was arguably excluded by the revised definition, but this possibility falls short of proving that the allegations in the complaint foreclose any possible rebuttal of the limitations defense.

### 2.    The unambiguous exclusion requirement.

In *DeFries v. Union Pacific Railroad Co.*, 104 F.4th 1091 (9th Cir. 2024), a case which involved another member of the *Harris* class action, the Ninth Circuit held that a revised class definition can exclude a putative class member from the class, but the exclusion must be unambiguous.

The plaintiff in *DeFries* was a conductor who failed an Ishihara color-vision test, so he was subjected to further assessment as part of Union Pacific's fitness-for-duty program and ultimately removed from service. *Id.* at 1095. The district

court granted Union Pacific's motion for summary judgment because it found the plaintiff was excluded from the class when the definition was revised in 2019. Plaintiff appealed. *Id.* at 1096.

On appeal, the Court framed the issue in the case as: "when does the narrowing of a class definition end *American Pipe* tolling of the statute of limitations for members of a putative or certified plaintiff class?" *Id.* at 1095.

The Court thoroughly analyzed the issue, relying heavily on *Smith v. Pennington*, 352 F.3d 884 (4th Cir. 2003) and *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248 (10th Cir. 1994) to decide the applicable standard, which it stated as follows:

> The key lesson we draw from *Pennington* and *Sawtell* is that to end *American Pipe* tolling, the exclusion of a plaintiff from a revised class definition must be "unambiguous." 352 F.3d at 894. Where the scope of the class definition in an initial complaint "arguably" includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them.

*DeFries*, 104 F.4th at 1099.

Applying this standard to the facts before it, the Court found that the revised class definition "was, at best, ambiguous with respect to plaintiffs like DeFries." *Id.* at 1105. The Court explained there was a reasonable interpretation of the revised definition that included DeFries. Using this interpretation, the Court ruled

15

DeFries was not unambiguously excluded by the revised definition, so the lower court erred by granting summary judgment for Union Pacific on this basis. *Id.* at 1107 ("that ambiguity requires reversal of summary judgment for Union Pacific.")

In *Zaragoza v. Union Pacific Railroad Co.*, 112 F.4th 313 (5th Cir. 2024), this Court considered the same issue: whether a *Harris* class member was excluded by the revised definition. Relying on *Pennington* and *Sawtell*, as the Ninth Circuit did, this Court agreed with *DeFries* and held that tolling ends only if the revised class definition unambiguously excludes the plaintiff in question. *Zaragoza*, 112 F.4th at 322-3.

Having decided the standard, the Fifth Circuit turned to the facts of Zaragoza's case. The Court observed that the answer turned on the meaning of the term "reportable health event." *Id.* at 321. The Court acknowledged that Union Pacific's interpretation "may prove to be true, but it is far from undisputed." "'[C]onstruing all facts and reasonable inferences in favor of the nonmoving party,'" there was an alternative interpretation that would mean the plaintiff did experience a reportable health event, meaning he was still included in the class under the revised definition. *Id.* at 321, quoting *Lillie v. Off. of Fin. Institutions State of Louisiana*, 997 F.3d 577, 582 (5th Cir. 2021).

Thus, it does not help Union Pacific to argue Bien was excluded under one interpretation of the term fitness-for-duty examination if there is another

16

reasonable interpretation whereby he was not excluded. *Mayer v. Union Pacific Railroad Co.*, No. 8:23-CV-225, 2025 U.S. Dist. LEXIS 125766, at *25 (D. Neb. Jul. 2, 2025) ("any ambiguities in the class definition do not affect the application of *American Pipe* tolling.") As explained below, it is reasonable to conclude the term fitness-for-duty examination included the actions taken by Union Pacific that were triggered by the results of the Ishihara test Bien took and passed in 2015.

### 3.    The term "fitness-for-duty examination" is broad.

"Fitness-for-duty examination" is not a defined term. Plaintiff contends that in the present context, it means a fitness-for-duty assessment, review, or evaluation – the overall process of reviewing or examining information for the purpose of deciding if he was fit for duty, with or without reasonable accommodations. Federal courts often use "examination" this way, to refer to the review and assessment of information. *See, e.g., Am. Sustainable Bus. Council v. Hegar*, No. 1:24-CV-01010-ADA, 2026 U.S. Dist. LEXIS 22918, at *6 (W.D. Tex. Feb. 3, 2026) ("An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party."); *Grizzle v. Smith Unit Mailroom Staff*, No. No. 5:24-CV-00187-H, 2025 U.S. Dist. LEXIS 230384, at *1 (N.D. Tex. Nov. 25, 2025) ("The District Court made an independent examination of the record and reviewed the Magistrate Judge's report for plain error.")

Plaintiff therefore contends the term fitness-for-duty examination is synonymous with the term fitness-for duty evaluation, a term that is used but not defined in the Medical Rules. According to the Medical Rules, which Bien attached to his complaint as Exhibit A (ROA.26-40061.298-309), fitness-for-duty evaluations "may include, but are not limited to various components such as: (1) regulatory medical certification requirements; (2) drug screen; (3) medical, psychological and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS." ROA.26-40061.301. This would include more than just tests; it could also include a review of records.

In its reply brief, Defendant argued a fitness-for-duty examination is much narrower. Its argument went as follows. Defendant began by noting Union Pacific denied Plaintiff's request to take another color-vision field test (CVFT), as Plaintiff acknowledged in his response to the motion to dismiss. From this acknowledgment, Defendant claims Plaintiff admitted that he did not undergo a fitness-for-duty examination. ROA.26-40061.188. This is a leap of logic based on an assumption – the assumption that the term fitness-for-duty examination refers only to tests like the CVFT. Thus, because Plaintiff did not dispute that he was not given another color-vision field *test*, Defendant claims this was an admission that he did not undergo a fitness-for-duty *examination*. ROA.26-40061.188.

18

The district court evidently agreed, stating: "Plaintiff never underwent a 'fitness-for-duty examination' or any secondary color-vision test that was triggered by the 2015 Ishihara Color Vision Test any time after September 18, 2014." ROA.26-40061.541. The district court never considered the possibility that something other than a test could qualify as a fitness-for-duty examination.

### 4.    Plaintiff's proposed interpretation is reasonable.

Plaintiff's interpretation of the term fitness-for-duty examination is supported by the Medical Rules, the plain meaning of the word "examination," and common sense. The Medical Rules say a fitness-for-duty evaluation can include matters related to certification, or a review and assessment of records and other information, such as an employee's work and safety records.

With respect to the color vision of conductors, federal regulatory medical certification requirements also come into play. Federal regulations require railroads to begin any assessment of a conductor's color vision by using one of twelve approved tests listed in 49 C.F.R. Part 242, Appendix D. An employee who fails this initial test is entitled to a secondary evaluation. *Id.* But even if the employee fails both, the medical director can still certify a conductor if he determines the employee "has the ability to safely perform as a conductor." 49 C.F.R. § 242.117(j). *See, e.g., Turner v. BNSF Ry. Co.*, 138 F.4th 224, 230 (5th Cir. 2025) (a railroad's medical examiner may certify a conductor who fails the tests "if he

19

deems it would be safe for him or her to conduct a train.")  The basis for this could be something other than a test, and consideration of such other factors would fall squarely within the plain meaning of the term fitness-for-duty examination, even without follow-up testing.

*DeFries* provides additional support for Plaintiff's interpretation. In its discussion of the consequences triggered by a failed Ishihara test, the Court wrote: "Union Pacific automatically routes anyone who fails this FRA-required testing into a *fitness-for-duty examination* and labels them as having a 'Diagnosis' of 'Color Vision Deficit.'" *Id.* at 1106 (emphasis added). The Court uses the term "fitness-for-duty examination" to refer to the evaluation process laid out in the Medical Rules, a process that includes far more than just tests. *DeFries* therefore supports Plaintiff's contention that the terms fitness-for-duty examination and fitness-for duty evaluation are synonymous.

> **5. The Third Amended Complaint alleges facts sufficient to support the conclusion Bien satisfied the "fitness-for-duty examination" clause in the revised class definition.**

When Union Pacific removed Bien from service in 2013, it sent him a letter (attached to the complaint as Exhibit B) stating that if it received updated medical information: "we will be glad to have the information reviewed and obtain another fitness-for-duty decision." ROA.26-40061.310. The information review part of this process would be a fitness-for-duty examination.

20

The Medical Rules do not include a procedure for making a fitness-for-duty *decision* without first conducting a fitness-for-duty *evaluation*. To the contrary, the Medical Rules say that Health and Medical Services ("HMS") has the final authority to make fitness-for duty decisions, and it makes its fitness for duty decisions "[a]fter a Fitness-For-Duty evaluation is complete." ROA.26-40061.303. Thus, in 2013, Union Pacific said if new information became available, it would "have the information reviewed [*i.e.* it would conduct a fitness-for-duty evaluation] and obtain another fitness-for-duty decision." ROA.26-40061.310.

On September 17, 2015, new medical information became available when Bien took and passed an Ishihara test. ROA.26-40061.289, ¶ 39. Next, as the lower court put it: "Based on this event, Plaintiff asked Defendant to have his medical information reviewed, to let him retake the color-vision field test, to reconsider the 2013 Work Restriction, and to reinstate him as a conductor." ROA.26-40061.531. Bien's request can reasonably be construed as a request for a new fitness-for-duty evaluation and decision.

Dr. Holland's October 13, 2015 letter states: "Because your 9/17/2015 14-plate Ishihara test showed a normal test result, you requested that you be allowed to retake the CVFT and have asked that your permanent work restrictions related to color vision be reviewed. Your request has been formally reviewed by a committee that reviews all CVFT appeals." ROA.26-40061.312. The letter also said the

21

committee had reviewed "all information." ROA.26-40061.531. ("After considering all information, the appeals committee concluded …").

Holland's letter did not specify what this committee normally does when it reviews CVFT appeals, or what it did in connection with Bien's case, but its review of all information is consistent with Plaintiff's allegation that Union Pacific did a fitness-for-duty examination in 2015, an examination that was triggered by the Ishihara test results.

The district court ignored this possibility and did not assume any of these facts in plaintiff's favor. Instead, the court stated: "Plaintiff never underwent a 'fitness-for-duty examination' or any secondary color-vision test that was triggered by the 2015 Ishihara Color Vision Test any time after September 18, 2014." ROA.26-40061.541. This wording suggests the lower court interpreted the term "fitness-for-duty examination" to mean testing, and nothing else. However, accepting Bien's pleadings as true, and drawing all reasonable inferences in his favor, the term "fitness-for-duty examination" is far more broad, and includes the "all information" review process triggered by Bien's 2015 Ishihara test results.

**6.    Plaintiff did not argue that the terms fitness-for-duty *examination* and fitness for duty *decision* were interchangeable.**

In its opinion, the district court implies that Plaintiff contends these terms are interchangeable. ROA.26-40061.540-41. This is incorrect, but perhaps understandable based on the briefing in the district court.

Union Pacific's motion to dismiss argued that the only adverse action relevant to this case was the 2013 decision to remove Bien from service. It dismissed the 2015 decision as a mere denial of a request for reconsideration of the 2013 decision. ROA.26-40061.120. The only argument regarding the revised class definition was the assertion that 2015 Ishihara test results did not satisfy the meaning of the terms "reportable health event." ROA.26-40061.125. Defendant's motion did not contest whether Bien was subject to a fitness-for-duty examination in 2015.

Plaintiff's response therefore focused on the importance of the 2015 decision as a new and independent act of discrimination with its own limitations period. ROA.26-40061.137-139. The response did not address the term "fitness-for-duty examination," because it was not an issue at the time.

It its reply brief, Defendant argued (for the first time) that Bien was not subject to a fitness-for-duty examination in 2015. ROA.26-40061.187. Having reframed the issue, Defendant criticized Plaintiff's response as being "misplaced"

and focusing on the wrong thing, urging the court to "look to the phrase "fitness-for-duty examination.'" ROA.26-40061.188. The district court picked up on this criticism, noting that "the *Harris* class did not use the term '*decision*,' as Plaintiff now asks the Court to use, but instead used the term 'examination.'" ROA.26-40061.540 (emphasis in the original). This choice of words implies that Plaintiff's response made an argument about the term fitness-for-duty examination that he did not make, but such is not the case.

That being said, the district court overemphasized the distinction between a fitness-for-duty *decision* and an *examination*. They are different things, but they are linked. The Medical Rules make it clear that a decision is preceded by a fitness-for-duty evaluation (or examination, if the words are interchangeable, as in *DeFries*). The Rules do not provide for an uninformed decision, made in a vacuum. Thus, if Union Pacific made a fitness-for-duty decision in 2015, it follows that the company also conducted a fitness-for-duty examination before making its decision.

Therefore, while the Third Amended Complaint could have provided greater detail about the occurrence of a fitness-for-duty examination in 2015, that is not fatal to Plaintiff's case. In a complaint, a plaintiff is not required to anticipate affirmative defenses and plead around them. Rather, the issue is whether Plaintiff's allegations (supplemented by matters attached to the complaint) negate the possibility of

24

Plaintiff's continued membership in the *Harris* class, thereby foreclosing his possible rejoinder to the statute of limitations defense. *Jaso*, 435 Fed. Appx. at 352.

Because Plaintiff can establish the possibility that he remained a class member, his complaint does not foreclose his possible rejoinder to the limitations defense, and the case should not have been dismissed.

## CONCLUSION

Appellant James Bien requests an order reversing the district court's order dismissing this case.

Respectfully submitted:

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Appellant

## CERTIFICATE OF SERVICE

I certify that on March 29, 2026, I filed an electronic copy of the foregoing document with the Clerk of the United States Court of Appeals for the Fifth Circuit using the court's CM/ECF system, which will serve all counsel of record.

/s/ Donald E. Uloth
Donald E. Uloth

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 5,284 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Donald E. Uloth
Donald E. Uloth