# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2026

Thomas B. Plunkett, III
Clerk

No. 26-40061

James Bien,

*Plaintiff—Appellant*,

*versus*

Union Pacific Railroad Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:25-CV-74

Before Smith, Haynes, and Engelhardt, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

James Bien worked for Union Pacific Railroad Company as a conductor. After failing two vision tests, he was given a work restriction and was removed from his job as a conductor. Approximately two years later, Bien passed a vision test, which Union Pacific had given him by mistake. He sought to remove his restriction by taking a follow-up test. After Union Pacific denied that request, he sued.

Union Pacific sought to dismiss Bien's suit as time-barred by the Americans with Disabilities Act ("ADA"). The district court granted Union

Pacific's Rule 12(b)(6) motion to dismiss, rejecting Bien's assertion that he was entitled to *American Pipe* tolling because he was a member of a previously filed class action's first class definition and was not unambiguously excluded from its revised class definition. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

We agree with Bien. Because excluding a class member from *American Pipe* tolling requires unambiguous exclusion, Union Pacific does not prevail. Its arguments, however elegant, are either insufficient to put exclusion beyond doubt or turn on the types of technical textual arguments that undermine the very purposes of *American Pipe* tolling. Accordingly, we reverse and remand with regard to Bien's exclusion from the revised class.

## I.

Bien was a locomotive train conductor. In 2013, as part of his Federal Railroad Administration ("FRA") certification, Bien took an Ishihara color vision test,[1] which he failed. In July 2013, Bien failed a follow-up "color vision field test." That same month, Union Pacific removed Bien from his job as conductor. Shortly thereafter, it sent Bien a letter informing him that he was restricted from working jobs that required color signal recognition and that his restriction could not be accommodated; it terminated his employment as a conductor. Bien failed another color vision field test in August 2013 and, in 2014 (after several months of unemployment), Union Pacific hired Bien as a Manager of Crew Utilization, a position that paid less.

---

[1] The Ishihara color vision test is a common ophthalmological test that "requires subjects to identify numbers and figures made up of multi-colored dots" to test for colorblindness. *Zaragoza v. Union Pac. R.R.*, 112 F.4th 313, 316 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1428 (2025); *see Turner v. BNSF Ry.*, 138 F.4th 224, 227 (5th Cir. 2025) (Ishihara tests "require[] individuals to distinguish between colors" and are administered to satisfy FRA regulations.).

In August or September 2015, Bien received a notification from Union Pacific about performing an FRA recertification physical. In September, per the notification, he took an Ishihara color vision test and passed. Accordingly, he requested that Union Pacific administer the field test required to confirm his recertification, reconsider his work restriction, and (upon success) reinstate him as a conductor.

In October 2015, Union Pacific sent Bien a letter responding to his request. The letter stated that his request had been "formally reviewed by a committee that reviews all [field test] appeals." It explained that said committee had (1) determined that the 2013 field test was valid; (2) concluded that Bien's color vision deficiency is "presumed to be hereditary and permanent" because he had not presented evidence that his 2013 failed tests were the result of some temporary condition; and (3) ruled that the 2015 passing Ishihara test "does not negate or override the finding" of the 2013 failed field test, because the field test is "a more accurate and definitive test" than the Ishihara test.

Apparently, the second Ishihara test was "done in error": Union Pacific had it administered to him by mistake. Because Bien had failed the 2013 tests, the only way he could legitimately retake the tests, under Union Pacific's system, would be first to dispute their accuracy or propriety. Nevertheless, Union Pacific's committee weighed the 2015 test as failing to override the presumption, and, "[a]fter considering all information" in his record, denied Bien's request to retake the field test.

Bien dual-filed a charge of discrimination with the EEOC and the Texas Workforce Commission in April 2020. After receiving a right-to-sue letter, Bien sued in January 2025.

Nearly nine years before Bien's suit, in February 2016, another group of plaintiffs filed a class action against Union Pacific in *Harris v. Union Pacific*

*Railroad Company*, 329 F.R.D. 616 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). The class was initially defined by the plaintiffs as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty *evaluation* at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Id.* at 621 (emphasis added). In February 2019, the *Harris* district court certified a narrower class that consisted of

> [a]ll individuals who have been or will be subject to a fitness-for-duty *examination* as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

*Id.* at 628 (emphasis added).

In the present case, the district court concluded that Bien was a part of the first class definition but not the second one, on the theory that Union Pacific's evaluation of his 2015 test was not a "fitness-for-duty examination" within the meaning of the second definition. Because exclusion from the second class meant that the statute of limitations on Bien's claims had run,[2] the district court granted the defendants' motion to dismiss. Since that ruling sufficed to resolve the case, it found the questions concerning exhaustion of administrative remedies and failure to state a claim to be moot. Bien appeals.

---

[2] The District of Nebraska certified the second class definition on February 5, 2019, so if that terminated any tolling of Bien's claims, he had 300 days (until December 2, 2019) to file his EEOC charge but did not do so until April 2020.

## II.

### A. Standard of Review

We review Federal Rule of Civil Procedure 12(b)(6) dismissal for failure to state a claim *de novo*. *Johnson v. Harris Cnty.*, 83 F.4th 941, 944 (5th Cir. 2023). "We accept all well-pleaded facts as true, drawing all reasonable inferences in favor of the nonmoving party," but legal conclusions and conclusory statements do not enjoy that presumption. *Id.* (citation modified). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling" *vel sim. Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Bien contends that *American Pipe* tolling applies.

### B. *American Pipe* Tolling

The basic idea of *American Pipe* tolling is that courts will equitably "stop the clock" on a given claim's statute of limitations if the plaintiff meets a class definition in a relevant class action case.[3] Tolling limitations in these circumstances is equitable because, absent *American Pipe* tolling, a plaintiff whose statute of limitations expires in the near future might be wary of signing onto a class action for fear that sometime after limitations has run, the class will be narrowed to exclude him (leaving him without a valid claim). *American Pipe*, 414 U.S. at 553. The *American Pipe* rule ensures that there is no penalty against those who forgo an individual suit and remain as party to

---

[3] *See Zaragoza v. Union Pac. R.R.*, 112 F.4th 313, 315, 318 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1428 (2025) (citing *Am. Pipe*, 414 U.S. at 554); *see also Am. Pipe,* 414 U.S. at 554 (statute of limitations tolled "as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").

the class action. *Zaragoza*, 112 F.4th at 318 (citing *American Pipe*, 414 U.S. at 553).

*American Pipe* tolling thus applies from the moment a plaintiff satisfies even a putative class definition, and it pauses his claim's statute of limitations unless and until he is unambiguously excluded from a class definition. *See Zaragoza*, 112 F.4th at 322.[4] Once a definition is adopted that unambiguously excludes a plaintiff, limitations resumes running. *Id.* at 321.

III.

A.

*Zaragoza*'s standard of unambiguous exclusion is designed to effect the aim of *American Pipe* tolling according to equitable principles. Requiring unambiguous exclusion from a class definition in order to resume the running of limitations makes sense: Any other rule would encourage plaintiffs to file individual suits the moment a class definition is arguably narrowed. *See Zaragoza*, 112 F.4th at 321–22 (citing *DeFries*, 104 F.4th at 1099). Our rule—that any ambiguity as to a plaintiff's exclusion from a class definition preserves *American Pipe* tolling—respects the equitable origin of tolling by supporting the aims of the relevant legal framework (i.e., *American Pipe* and Rule 23 itself).[5]

---

[4] "'Ending *American Pipe* tolling with anything short of unambiguous narrowing would undermine the balance contemplated by the Supreme Court' by 'encourag[ing] putative or certified class members to rush to intervene as individuals or to file individual actions.'" *Id.* (quoting *DeFries v. Union Pac. R.R.*, 104 F.4th 1091, 1099 (9th Cir. 2024)). Notably, *Zaragoza* also dealt with *American Pipe* tolling pursuant to the *Harris* class action cited by Bien.

[5] *See SEC v. Hallam*, 42 F.4th 316, 340 n.101 (5th Cir. 2022) (The maxim that "equity follows the law" means that equity sits outside the law, either leaving it in full force or circumscribing its application in a given case, all in order to promote the aims of the law in general.) (citing 1 JOHN NORTON POMEROY, TREATISE ON EQUITY JURISPRUDENCE § 427 at 468 (1st ed. 1881)). *Cf. id* at 340 & n.100. ("The historical role for equity

Thus, even if Union Pacific presents a plausible reading of the class definition, that is not sufficient to exclude Bien unambiguously from the class. *American Pipe* does not require a plaintiff to squint at the words of a class definition to divine his exclusion from imprecise alterations or subtle shifts of syntax.[6] Defendants, consequently, may not create exclusion out of fine-grained linguistic variations among definitions.

If "unambiguous exclusion" is to do any work at all as a legal standard for analyzing class definitions for purposes of *American Pipe* tolling, it must mean that exclusion is not a matter up for serious debate.[7] Nothing but the

---

was to occupy that space 'not regulated by some express or written law.'" (quoting 1 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE 5 (1st ed. 1836))).

[6] We follow the reasoning behind *DeFries*, the rule of which the *Zaragoza* court followed as regards *American Pipe* tolling. *See Zaragosa*, 112 F.4th at 322. The *DeFries* court explained that any other rule might require plaintiffs with strong interest in the outcome of a class action to hire legal counsel to monitor and carefully parse any changes to the class definition. *DeFries*, 104 F.4th at 1099. Those whose financial stake is insufficient to justify individual counsel would lose out, contrary to the aim of class actions in general. Similarly, those with a large financial stake would have no incentive to remain party to a class action if they would already have to pay for lawyers to monitor the class definition's evolution; duplicative litigation of redundant claims would result. *Id.* at 1100. The rule requires defendants to respect the policy judgment of Rule 23 and refrain from trying to litigate class membership in *American Pipe* cases unless the exclusion is so obvious as to obviate any need for costly litigation of the matter.

[7] Thus, "unambiguous exclusion" is not meant to imply a standard of clarity akin to the old *Chevron* regime in administrative law, which turned on an inquiry into whether the text of an authorizing statute was ambiguous. *See generally Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). In the *American Pipe* context, the inquiry is whether a plaintiff without counsel would understand that the class definition unambiguously excluded him. Under *Chevron*, however, courts examined whether a text was ambiguous at all—not merely whether it was ambiguous as to one metric, such as exclusion—or whether the text was clear to an interpreting court. *See, e.g., Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687, 730 (1995) (SCALIA, J., dissenting) (no *Chevron* deference when a statute is "in its totality an unambiguous . . . text" such that it "cannot possibly

most straightforward, black-and-white, no-lawyer-required cases of exclusion will end *American Pipe* tolling for a plaintiff who meets an initial class definition. Conversely, a plaintiff who offers a plausible reading of the class definition that includes him will enjoy the benefit of *American Pipe* tolling.

B.

Having laid out the relevant law, we apply it to the facts.

Recall that the putative class definition originally proffered in *Harris* (the Nebraska class action) encompassed individuals who were adversely affected "for reasons *related to* a Fitness-for-Duty *evaluation*" in the relevant time period. *Harris*, 329 F.R.D. at 621 (emphases added). The district court's certified class, in relevant part, extended to those who "have been or will be *subject to* a fitness-for-duty *examination*" in the relevant time period. *Id.* at 628 (emphases added). The only event Bien advances as within these definitions' sweep was his 2015 test and correspondence with Union Pacific. The issue at hand is whether the second (certified) class definition unambiguously excluded Bien because his test and correspondence with Union Pacific was not "subject[ion] to" a "fitness-for-duty examination."

Union Pacific urges that Bien unambiguously falls outside the narrower class definition because he was not "subject to" an "examination." Union Pacific primarily contends that the word "examination" refers to a particular, discrete part of a broader fitness-for-duty evaluation under its Medical Rules.[8] Further, it argues that, even if "examinations" and "evalu-

---

bear [an agency's] asserted meaning" in "the context of an Act that must be interpreted" by a court). *Cf. Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 326 (2014) (*Chevron* deference is impermissible where statutory terms are clear, even in the context of a complex statutory scheme).

[8] The relevant language in the Union Pacific Medical Rules states that fitness-for-duty-evaluations include "all medical tests, examinations, and evaluations" necessary by

ations" are interchangeable, Bien was not "subject to" a fitness-for-duty evaluation or examination because subjection requires unilateral action on the part of the employer (whereas Bien requested his review), and because Union Pacific did not actively subject him to any examination, but rather, merely declined to reopen his case.

Bien counters that he was not unambiguously excluded from the recertified class because the term "fitness-for-duty examination" is broad—encompassing a "fitness-for duty assessment, review, or evaluation—that is "the overall process of reviewing or examining information for the purpose of deciding if [he] was fit for duty." Bien notes that the Union Pacific Medical Rules use the terms "evaluation" and "examination" interchangeably. Finally, he maintains that he should at least survive a motion to dismiss because the doctor's letter included in the record indicates that the committee reviewed all information.

C.

Bien has the better of the argument. First, it would seem plausible, on its face, that Bien's second test "subject[ed]" him to a fitness-for-duty examination within the meaning of the second class definition. The fact that the test was given in error is not relevant to whether he was plausibly "subjected to an examination" per the certified class definition.

The review process confirms that Bien should not reasonably have been on notice as to his unambiguous exclusion from the *Harris* class's certified definition.[9] Union Pacific had Bien take a test (even if by error) and

---

law and company regulation and "may include, but are not limited to [sic] various components such as: (1) regulatory medical certification requirements; (2) drug screen; (3) medical, psychological and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS."

[9] Of course, having Bien take a test was, plausibly, subjection to a fitness-for-duty

then denied his request for re-testing and reinstatement. Union Pacific's letter stated that his request had been "formally reviewed by a committee that reviews all [field test] appeals" and ruled that his passing the 2015 Ishihara test "does not negate or override" the findings underlying his previous work restriction. And its review came "[a]fter considering all information" in his record.[10] Union Pacific had Bien take a test that unambiguously bore on the validity of his fitness-for-duty (since it was a component of the very tests that led to his work restriction), and that test plausibly examined his status. The fact that Union Pacific had to weigh the new test evidence against his prior status shows that the 2015 test and review did not unambiguously fail to subject him to a fitness-for-duty examination.

Union Pacific's textual arguments fail to show that Bien's interpretation was obviously and irrefutably wrong.

First, Union Pacific claims that Bien's test and its review thereof were unambiguously not "examinations" of any kind. It suggests that its Medical Rules name *evaluations* as a broad process of assessing fitness-for-duty but that *examinations* are some particular part of that process (namely, the field test that Union Pacific denied Bien). But the inclusion of "examinations" in Union Pacific's internal definition of "fitness-for-duty evaluation" does not foreclose a plausible lay understanding that a "fitness-for-duty examination" is interchangeable with a "fitness-for-duty evaluation."[11] And the Medical

---

examination. Lack of action or a summary denial would not change that fact.

[10] *DeFries* lends support to the proposition that the document review is a fitness-for-duty examination. That case states that those who fail FRA-required testing are "route[d] . . . into a fitness-for-duty examination" and "lab[eled] as having a 'Diagnosis' of 'Color Vision Deficit.'" 104 F.4th at 1106; *see also id.* at 1101 (after failing a light cannon test, plaintiff "was then routed into the fitness-for-duty program" in which his case was reviewed and adjudicated).

[11] This same critique applies with equal force to its claim that Bien's complaint

Rules define fitness-for-duty-evaluations to include "all medical tests, examinations, and evaluations" necessary for compliance, including "functional evaluations" and "other information as deemed necessary." It would be questionable to say that the word "examination" refers only to one particular vision test, when the Medical Rules include it among such a panoply of broad evaluative abstract nouns. It would be strange to say that Union Pacific's proposed reading of the Medical Rules is the true and only unambiguous reading of the *Harris* certified class definition.

Second, Union Pacific posits that Bien was not "subject to" an examination "as a result of a reportable health event," citing *DeFries* for the proposition that the certified *Harris* class was intentionally narrowed. But *DeFries*, 104 F.4th at 1102, interprets the class to have been intentionally narrowed to exclude those who were subject to a fitness-for-duty examination only as a routine matter of employment and not as the result of a health event. Because Bien's 2015 test and his previous tests are arguably reportable health events, he is not unambiguously one of the plaintiffs who were supposedly meant to be excluded by the *Harris* narrowed class definition.[12]

---

refers "only to 'examinations.'"

[12] Indeed, *Zaragoza* does not find that the class was narrowed for tolling purposes precisely because the *Harris* class was overruled as overbroad by the Eighth Circuit, at Union Pacific's request. *See* 112 F.4th at 320–21. The certified class definition (which was overruled) itself seems to have been narrowed in response to Union Pacific's argument that clever lawyering could make the original definition broader than plaintiffs intended. *See DeFries*, 104 F.4th at 1102. Any difference between the unambiguous meaning of the first and second definitions, then, must be tied to the particular and counterintuitive legal loophole that the latter was meant to close.

*Zaragoza* also suggested, though did not hold, that Union Pacific may be estopped from discarding earlier representation about the *Harris* class's being overbroad in order to assert that the plaintiff falls outside of the certified class. 112 F.4th at 321 n.5. Union Pacific is also wrong to say that the incorporation by reference of its Medical Rules' definition of a reportable heath event forecloses Bien's reading. *See DeFries*, 104 F.4th at 1105–06.

Just like the change from "related to" to "result of" a reportable health event between the first and second definitions, this change "turns on the kinds of subtle distinctions in language that are fodder for lawyers and quicksand for laymen."[13] Such fine variations cannot form the basis of the kind of unambiguous exclusion necessary to kill *American Pipe* tolling; to hold otherwise would undermine the entire point of the judiciary's recognition of *American Pipe* tolling.

Union Pacific has provided elegant and persuasive arguments for why its reading is the best rendering of the text. But it has not provided a reading so unambiguously clear that a bystander plaintiff such as Bien would have recognized his exclusion with no plausible contrary argument. That being the case, Bien is entitled to *American Pipe* tolling.[14]

## IV.

We choose not to reach the issue of whether the plaintiff exhausted all of his administrative remedies. The district court dismissed the question of exhaustion as moot; Bien did not mention it in his opening brief; and it received relatively minimal briefing in the answering briefs. So we remand it for the district court to address.

* * * * *

Bien was not unambiguously excluded from the *Harris* class action, and so the statute of limitations on his claim was tolled under *American Pipe*. Accordingly, we REVERSE with regard to Bien's exclusion from the class and REMAND for further proceedings. We place no limitation on the mat-

---

[13] *DeGeer v. Union Pac. R.R.*, 113 F.4th 1035, 1040 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1426 (2025).

[14] Union Pacific's other claims concerning Bien's complaint also do nothing to change this conclusion, as they are largely reiterative of and reliant on the points above.

ters that the district court, as appropriate, may address, and we express no view on what decisions it should announce.